NOTICE OF OBJECTION TO CONFIRMATION

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:
**Clerk
U.S. Bankruptcy Court
50 Walnut Street, 3rd Floor
Newark, NJ 07102**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

MARIE-ANN GREENBERG, Trustee
30 TWO BRIDGES ROAD, SUITE 330
FAIRFIELD, NJ 07004

Attend the hearing scheduled to be held on 12/12/2019 in the NEWARK Bankruptcy Court, at the following address:
**U.S. Bankruptcy Court
50 Walnut Street, 3rd Floor
Newark, NJ 07102**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: November 22, 2019

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 831626**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST

| | |
|---|---|
| In Re:<br><br>    ROSEMARIE TRAYNOR<br><br><br>Debtors | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>Chapter 13<br><br>Case No. 19-28352 - JKS<br><br>Hearing Date: 12/12/2019 |

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor,

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST, the

holder of a Mortgage on debtors residence located at 22-13-81 TUSCARORA DRIVE, POCONO

LAKE, PA 18347 hereby objects to the Confirmation of the debtors proposed Chapter 13 Plan on

the following grounds:

1.      On November 21, 2019, Movant filed a Proof of Claim listing pre-petition

arrears in the amount of $62.45.  A copy of the filed Proof of Claim is attached hereto as

Exhibit "A" and made a part hereof.

2.      Debtors' Plan fails to cure the delinquency pursuant to 11 U.S.C.

§1322(b)(5).

3.      Debtors' Plan currently provides for payment to Movant in the amount of

$0.00. A copy of the Debtors' Plan is attached hereto as Exhibit B. Movant therefore objects

to Debtors' Plan as it is underfunded. Debtors' Amended Plan should be amended to fully

fund the arrears owed to Movant. Confirmation of Debtors' proposed Amended Plan should

be denied.

4.      Debtors' Plan also fails to list Movant as a secured creditor and does not provide for payment of on-going, post-petition, mortgage payments to Movant. Movant objects to Debtors' Plan as it is should be amended to clearly state that Movant's first position mortgage lien will be retained and the mortgage lien will be paid according to the mortgage loan, note terms and conditions. Debtors' Plan should be amended to provide for on-going, post-petition, regular monthly mortgage payments to Movant.

5.      Movant also objects to Debtors' Plan in that it does not provide for ongoing post-petition monthly mortgage payments. Movant objects to any amount less than 100% of what is required under the terms of the loan documents. In the alternative, Debtors' Plan should be amended to state the property will be surrendered. Confirmation of the Plan should be denied.

WHEREFORE, U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST respectfully requests that the Confirmation of Debtors Plan be denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: November 22, 2019

# Exhibit "A"

| **Fill in this information to identify the case:** |
|---|
| Debtor 1  Rosemarie Traynor |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court for the District of NEW JERSEY |
| Case number 19-28352 |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | | |
|---|---|---|---|
| 1. | **What is the current creditor?** | LSF11 Master Participation Trust | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else** | [X] No<br>[ ] Yes.   From whom? _____ |

| | | | |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | | Caliber Home Loans<br>Name | Caliber Home Loans<br>Name |
| | | 13801 Wireless Way<br>Number       Street | PO Box 24330<br>Number       Street |
| | | Oklahoma City  OK  73134<br>City              State           ZIP Code | Oklahoma City  OK  73124<br>City              State           ZIP Code |
| | | Contact phone  800-401-6587 | Contact phone  800-401-6587 |
| | | Contact email  Bankruptcy-SD@CaliberHomeLoans.com | Contact email  Bankruptcy-SD@CaliberHomeLoans.com |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one)<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| | | | |
|---|---|---|---|
| 4. | **Does this claim amend one already filed?** | [X] No<br>[ ] Yes.   Claim number on court claim registry (if known) _____ | Filed on _____<br>MM/DD/YYYY |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | [X] No<br>[ ] Yes.   Who made the earlier filing? _____ |

Official Form 410A **Mortgage Proof of Claim Attachment** Page 1 of 41

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | **Do you have any number you use to identify the debtor** | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>8174</u> |
|---|---|---|

| 7. | **How much is the claim?** | $   <u>47,562.41</u>            **Does this amount include interest or other charges?**<br>                          [ ] No<br>                          [X] Yes.   Attach statement itemizing interest, fees,<br>                                         expenses, or other charges required by<br>                                         Bankruptcy Rule 3001(c)(2)(a) |
|---|---|---|

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>   <u>MONEY LOANED</u> |
|---|---|---|

| 9. | **Is all or part of the claim secured?** | [ ] No<br>[X] Yes    The claim is secured by a lien on property.<br><br>   **Nature of property:**<br><br>   [X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim*<br>                  *Attachment* (Official Form 410-A) with this Proof of Claim.<br>   [ ]       Motor vehicle<br>   [ ]       Other. Describe:   <u>21-13-81 Tuscarora Drive, Pocono Lake, PA 18347</u><br><br>   **Basis for perfection**:    <u>Mortgage/Deed of Trust</u><br><br>   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or another document that shows the lien has been filed or recorded.)<br><br>   **Value of property:**             $<br><br>   **Amount of the claim that is secured:**   $ <u>47,562.41</u><br><br>   **Amount of the claim that is unsecured:** $<u>           </u>   (The sum of the secured and unsecured<br>                                                             amounts should match the amount in line 7)<br><br>   **Amount necessary to cure any default as of the date of the petition:**   $ <u>62.45</u><br><br>   **Annual Interest Rate** (when case was filed) <u>6.2500</u>%<br><br>   [X]       Fixed<br>   [ ]       Variable |
|---|---|---|

| 10. | **Is this claim based on a lease?** | [X]   No<br><br>[ ]   Yes. **Amount necessary to cure any default as of the date of the petition.**       $<u>            </u> |
|---|---|---|

| 11. | **Does this claim involve a right to setoff?** | [X]   No<br><br>[ ]   Yes. Identify the property  <u>                                    </u> |
|---|---|---|

Official Form 410A **Mortgage Proof of Claim Attachment** Page **2** of **41**

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?** | [X] No | |
| | | [ ] Yes. *Check one:* | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | [ ] Up to $3,025* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $_____ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $_____ |
| | | [ ] Contributions to an employee benefit plan.11 U.S.C. §507(a)(5). | $_____ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | $_____ |

*Amount are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment*

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box*

[ ]  I am the creditor
[X]  I am the creditor's attorney or authorized agent.
[ ]  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ]  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/21/2019
                    MM/DD/YYYY

/s/ Sindi Mncina
      Signature

**Print the name of the person who is completing and signing this claim:**

**Sindi Mncina**
Authorized Agent for Secured Creditor
RAS Crane, LLC
10700 Abbott's Bridge Road, Suite 170
Duluth, GA, 30097
470-321-7112

**Mortgage Proof of Claim Attachment**         **(12/15)**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 19-28352 | Principal balance: | $47,678.05 | Principal & interest due: | $0.00 | Principal & interest: | $443.32 |
| Debtor 1: | Rosemarie Traynor | Deferred Amount: | $0.00 | Prepetition fees due: | $0.00 | Monthly escrow: | $196.63 |
| Debtor 2: | | Interest due: | $215.21 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | N/A |
| Last 4 digits to identify: | 8174 | Fees, costs due: | $0.00 | Projected escrow shortage: | $62.45 | Total monthly payment: | $639.95 |
| Creditor: | LSF11 Master Participation Trust | Escrow deficiency for funds advanced: | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer: | Caliber Home Loans, Inc. | Less total funds on hand: | -$330.85 | Total prepetition arrearage: | $62.45 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | $47,562.41 | | | | |

| Part 5 : Loan Payment History from First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |

Representation of Printed Document



**CALIBER**
HOME LOANS

Caliber Home Loans, Inc.
P.O. Box 619063
Dallas, TX 75261-9063

## ESCROW ACCOUNT DISCLOSURE STATEMENT

| | |
|---|---|
| Statement Date: | 10/02/2019 |
| Loan Number: | 8174 |
| Current Payment Amount: | $635.12 |
| New Payment Amount: | $639.95 |
| New Payment Effective Date: | 10/01/2019 |

Property Address: 2187 TUSCARORA DR
POCONO LAKE PA 18347

SCOTT H TRAYNOR
ROSEMARIE TRAYNOR
C/O CAMILLE J KASSAR
271 US HIGHWAY 46 STE C102
FAIRFIELD NJ 07004-2451

Hello!

At Caliber Home Loans, we examine your escrow account at least annually to make sure there is enough money in your account to cover your tax and/or insurance payments. This review accounts for any increases or decreases in your taxes or insurance that can result in changes to your payment amount. The following outlines your actual escrow account activity since your previous disclosure or initial disclosure and the anticipated activity for the next 12 months.

Based on our review, you have sufficient funds in your escrow account at this time. To view differences between your current payment and new payment, please refer to Section 1 below. To view changes in your escrow account, please refer to Section 3 of this statement. Your new payment was calculated based on the information in Section 2 below. Section 2 includes changes that are anticipated over the next 12 months, while Section 3 displays your history as of the last escrow analysis.

## Section 1 - Payment Breakdown

This section provides a breakdown of both your current and new payment which will become effective 10/01/2019.

| Payment Breakdown | Current Payment | | New Payment Effective 10/01/19 |
|---|---|---|---|
| Principal & Interest | $ | 443.32 | $ 443.32 |
| Base Escrow Payment | $ | 191.80 | $ 196.63 |
| Shortage Payment | $ | 0.00 | $ 0.00 |
| Surplus Adjustment | $ | 0.00 | $ 0.00 |
| **TOTAL** | **$** | **635.12** | **$ 639.95** |

**If you utilize a bill paying service, please notify them of the payment changes scheduled to occur.**

## Section 2 - Escrow Calculation & Anticipated Escrow Activity

This section displays information regarding your escrow account and anticipated escrow activity for the next 12 months.

It was determined that your account has sufficient funds by calculating the difference between your anticipated escrow balance and your required balance at the projected lowest point of your anticipated balance over the next 12 months. These balances are identified in the chart below in red next to the following symbol (>).

To ensure your account maintains enough money for future tax and insurance payments, a cushion is maintained on your loan when applicable, to help avoid a negative balance in your escrow account. This cushion may include up to two months' worth of your base escrow payment to cover increases in your tax or insurance payments. Your escrow balance should not fall below $393.26, which is your cushion amount and required balance. (Mortgage insurance is not included in your cushion calculation.)

| Anticipated Month of Activity | Anticipated Payments To Escrow | Anticipated Disbursements From Escrow | Description | | Anticipated Balance | Required Balance |
|---|---|---|---|---|---|---|
| | | | | Starting Balance | $393.30 | $393.30 |
| 10/2019 | $196.63 | $.00 | | | $589.93 | $589.93 |
| 11/2019 | $196.63 | $.00 | | | $786.56 | $786.56 |
| 12/2019 | $196.63 | $.00 | | | $983.19 | $983.19 |
| 01/2020 | $196.63 | $.00 | | | $1,179.82 | $1,179.82 |
| 02/2020 | $196.63 | $.00 | | | $1,376.45 | $1,376.45 |
| 03/2020 | $196.63 | $.00 | | | $1,573.08 | $1,573.08 |
| 04/2020 | $196.63 | -$427.31 | CITY/TOWN | | $1,342.40 | $1,342.40 |
| 05/2020 | $196.63 | -$450.00 | HOMEOWNER INS | | $1,089.03 | $1,089.03 |
| 06/2020 | $196.63 | $.00 | | | $1,285.66 | $1,285.66 |
| 07/2020 | $196.63 | $.00 | | | $1,482.29 | $1,482.29 |
| 08/2020 | $196.63 | $.00 | | | $1,678.92 | $1,678.92 |

**(Continued on the Back)**

**CALIBER**
HOME LOANS

Internet Reprint

## Section 2 - Escrow Calculation & Anticipated Escrow Activity (continued)

| Anticipated Month of Activity | Anticipated Payments To Escrow | Anticipated Disbursements From Escrow | Description | | Anticipated Balance | Required Balance | |
|---|---|---|---|---|---|---|---|
| 09/2020 | $196.63 | -$1,482.29 | SCHOOL | | $393.26 | $393.26 | > |

**For assistance with your payment, please contact Caliber Customer Service at 1-800-401-6587.**

## Section 3 - Escrow Account History

This section itemizes your actual escrow account history since your last escrow analysis or initial disclosure. By comparing previous projections with actual payments and disbursements, you can determine where a difference may have occurred. An asterisk (*) indicates a difference in either the amount or date.

When applicable, the letter 'E' beside an amount indicates that a payment or disbursement has not yet occurred, but is estimated to occur as shown.

| Month of Activity | Anticipated Escrow Payments | Actual Escrow Payments | Anticipated Disbursements From Escrow | Description | Actual Disbursements From Escrow | Description | Anticipated Balance | Actual Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Starting Balance | $1,309.89 | $920.54 |
| 05/2019 | $191.80 | $.00 | -$403.00 | HOMEOWNER INS | $.00 | | $1,098.69 | $920.54 |
| 06/2019 | $191.80 | $575.40 | $.00 | | -$450.00 | HOMEOWNER INS * | $1,290.49 | $1,045.94 |
| 07/2019 | $191.80 | $.00 | $.00 | | $.00 | | $1,482.29 | $1,045.94 |
| 08/2019 | $191.80 | $.00 | $.00 | | $.00 | | $1,674.09 | $1,045.94 |
| 09/2019 | $191.80 | $767.20 | -$1,482.29 | SCHOOL | -$1,482.29 | SCHOOL | $383.60 | $330.85 |

## Section 4 - Questions

For questions regarding your statement, please contact Caliber Customer Service at 1-800-401-6587. Our business hours are Monday through Friday, 8:00 AM to 7:00 PM CST. Please also visit our website at www.caliberhomeloans.com.

# NOTE



June 13th, 2003
[Date]

POCONO LAKE
[City]

PA
[State]

**22-13-81 TUSCARORA DRIVE
POCONO LAKE, PA 18347**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 72,000.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is

**Mortgage America, Inc.**

**1405 N. Cedar Crest Blvd., Ste. 51, Allentown, PA 18104**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.25000        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

. (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**        day of each month beginning on **August 01, 2003**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 01, 2033**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1405 N. Cedar Crest Blvd., Ste. 51
Allentown, PA 18104**        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 443.32

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207)        Form 3200-1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00**          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
SCOTT H. TRAYNOR          -Borrower     ROSEMARIE TRAYNOR          -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                                -Borrower

*[Sign Original Only]*

Allonge to Note dated June 13, 2003

Scott H. Traynor
Rosemarie Traynor
22-13-81 Tuscarora Drive
Pocono Lake, PA  18347

72,000-00

PAY TO THE ORDER OF
Chase Manhattan Mortgage Corporation

WITHOUT RECOURSE
MORTGAGE AMERICA, INC.

Daniel J. Barrett/President

Pay to the Order of
Without Recourse
Chase Manhattan Mortgage Corporation

BY
DENISE ADKINS/ASST. SECRETARY

```
INSTRUMENT NUMBER   RECORDER OF DEEDS
200328150           MONROE COUNTY
RECORDED ON         PENNSYLVANIA
JUN  17,  2003
10:07:55 AM
BOOK:REC/2156
PAGE:7598
Total Pages: 12

AFFORDABLE HOUSING   $13.00
RECORDING FEES       $49.00
ACCESS TO            $10.00
STATE WRIT TAX        $0.50
CO ARCHIVES FEE       $2.00
JUD ARCHIVES FEE      $3.00
TOTAL                $77.50
```

Prepared By:                              Return To:
Mortgage America, Inc.                    Mortgage America, Inc.

1405 N. Cedar Crest Blvd. #51             1405 N. Cedar Crest Blvd. #51
Allentown, Pa. 18104                      Allentown, Pa. 18104

Parcel Number:

————————————————[Space Above This Line For Recording Data]————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated       June 13th, 2003              ,
together with all Riders to this document.
(B) "Borrower" is SCOTT H. TRAYNOR and ROSEMARIE TRAYNOR, HUSBAND and WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is       Mortgage America, Inc.

Lender is a       mortgage banker

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3039 1/01

VMP®-6(PA) (0008)
Page 1 of 16          Initials:
VMP MORTGAGE FORMS - (800)521-7291

REC Book 2156 Page 7598

organized and existing under the laws of    **The State of Pennsylvania**
Lender's address is **1405 N. Cedar Crest Blvd. #51, Allentown, Pa. 18104**

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated    **June 13th, 2003**
The Note states that Borrower owes Lender
**Seventy Two Thousand   and 00/100**                                                       Dollars
(U.S. **$72,000.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July 1st, 2033**
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(PA) (0008)                          Page 2 of 16                          Form 3039 1/01

REC Book 2156 Page 7599

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the      **county**      [Type of Recording Jurisdiction]
of      **MONROE**                                              [Name of Recording Jurisdiction]:

        **See attached legal description.**

which currently has the address of          **22-13-81 TUSCARORA DRIVE**
              **POCONO LAKE**                                                                    [Street]

                                                [City], Pennsylvania **18347**          [Zip Code]

("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**-6(PA)** (0008)                          Page 3 of 16                                     Form 3039  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be

-6(PA) (0008)                    Page 4 of 16                    Form 3039  1/01

REC Book 2156 Page 7607

paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

REC Book 2156 Page 7608

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

REC Book 2156 Page 7609

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

REC Book 2156 Page 7610

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(PA) (0008)                    Page 9 of 16        Initials: _SLH_                    Form 3039  1/01
                                                            _RT_

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

 -6(PA) (0008)                    Page 10 of 16                    Form 3039  1/01

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to



have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

-6(PA) (0008)                              Page 12 of 16                    Initials: SH PJ          Form 3039  1/01

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.





-6(PA) (0008)                     Page 13 of 16                              Form 3039  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                         SCOTT H. TRAYNOR        -Borrower

_____                    _____ (Seal)
                                         ROSEMARIE TRAYNOR       -Borrower

_____ (Seal)             _____ (Seal)
               -Borrower                               -Borrower

_____ (Seal)             _____ (Seal)
               -Borrower                               -Borrower

_____ (Seal)             _____ (Seal)
               -Borrower                               -Borrower

REC Book 2156 Page 7618

**Certificate of Residence**

I,                                                                                    , do hereby certify that
the correct address of the within-named Mortgagee is **1405 N. Cedar Crest Blvd. #51**
**Allentown, Pa. 18104**

Witness my hand this        /3            day of    June     2003

_____

Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,**    Monroe        County ss:

On this, the        /3        day of    June    2003            , before me, the
undersigned officer, personally appeared

Scott  H. Traynor  &  Rosemarie  Traynor

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

Notarial Seal
Eric D. Hanna, Notary Public
Tobyhanna Twp., Monroe County
My Commission Expires Jan. 31, 2005
Member, Pennsylvania Association of Notaries

_____
Title of Officer

VMP -6(PA) (0008)                    Page 16 of 16                    Form 3039 1/01

I Hereby CERTIFY that this document is recorded in the
Recorder's Office of Monroe County, Pennsylvania

**REC Book 2156 Page 7619**

Stewart Title Guaranty Company

Commitment Number: █████

## SCHEDULE C
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

ALL THAT CERTAIN piece, parcel and tract of land situated in the Township of Coolbaugh, County of Monroe, and State of Pennsylvania, more particularly described as follows, to wit:

BEING █████████████ set forth on the map entitled Plan of Lots, Arrowhead Lake, Section Thirteen, Coolbaugh Township, Monroe County, Pennsylvania, dated April 1965 Scale 1" to 100' by John B. Aicher, Monroe Engineering Inc., Stroudsburg, Pennsylvania and filed in the Office for the Recording of Deeds in and for the County of Monroe, Pennsylvania in Plat Book 9, Page 185 on May 4, 1965.

ALTA Commitment
Schedule C

(TRAYNOR.PFD/6345/5)

REC Book 2156 Page 7601

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **13th**        day of **June, 2003**        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to
**Mortgage America, Inc.**

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:
**22-13-81 TUSCARORA DRIVE, POCONO LAKE, PA, 18347**

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the
Property or give a management firm or any other person any control over the occupancy or use
of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with
the Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

**MULTISTATE SECOND HOME RIDER** - Single Family -
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 2                                                    Form 3890 1/01

**VMP-365R** (0011)              VMP MORTGAGE FORMS - (800)521-7291         Initials: _SW_
                                                                                          _PT_

REC Book 2156 Page 7602

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

X _____ (Seal)    _____ (Seal)
SCOTT H. TRAYNOR        - Borrower    ROSEMARIE   TRAYNOR        - Borrower

_____ (Seal)    _____ (Seal)
                        - Borrower                            - Borrower

_____ (Seal)    _____ (Seal)
                        - Borrower                            - Borrower

_____ (Seal)    _____ (Seal)
                        - Borrower                            - Borrower

-365R (0011)                    Page 2 of 2                    Form 3890 1/01

REC Book 2156 Page 7603

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **13th**       day of
      **June, 2003**       , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
      **Mortgage America, Inc.**

**Mortgage America, Inc.**       (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
      **22-13-81 TUSCARORA DRIVE     POCONO LAKE, PA 18347**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

      PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

      A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** · Single Family · **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**       Form 3150 1/01
      Page 1 of 3       Initials: _____

**VMP-7R** (0008)       VMP MORTGAGE FORMS · (800)521-7291

REC Book 2156 Page 7604

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP-7R (0008)                    Page 2 of 3            Initials: _____            Form 3150 1/01

REC Book 2156 Page 7605

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD
Rider.

_____ (Seal)          _____ (Seal)
SCOTT H. TRAYNOR            -Borrower      ROSEMARIE  TRAYNOR            -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                   -Borrower


-7R (0008)                    Page 3 of 3                    Form 3150 1/01


REC Book 2156 Page 7606



③
2P
4L2

Prepared By:BARBARA J. KOCH

Return To:  Mortgage America Inc.
            1405 North Cedar Crest Blvd.,
            Suite 51
            Allentown, PA 18104

Borrower:SCOTT H. TRAYNOR and ROSEMARIE TRAYNOR

Loan N[___]

_____SPACE ABOVE THIS LINE FOR RECORDER'S USE_____
ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:

FOR VALUE RECEIVED, MORTGAGE AMERICA INC., (Assignor), a Corporation organized and doing business under the laws of the State of Pennsylvania having its office and principal place of business at 1405 N. Cedar Crest Blvd. SUITE 51, Allentown, PA  18104, hereby sells, assigns, transfers and sets over to:

Chase Manhattan Mortgage Corporation
200 Old Wilson Bridge Road
Worthington, OH  43085

Hereinafter designated as Assignee, all of its rights, title and interest, as holder thereof, in and to the following described lien in the form of a mortgage or deed of trust, the property therein described and the indebtedness thereby secured:

Mortgage / Deed of trust

Borrower:SCOTT H. TRAYNOR and ROSEMARIE TRAYNOR, HUSBAND and WIFE

Lender: Mortgage America

Lender Address: 1405 North Cedar Crest Blvd., Suite 51
                Allentown, PA 18104               Original Principal Amount: $ 72,000.00
Note Date: 6/13/03                                BK / RI / Liber No.:      Page:
Date Record:                                      Instrument No:
County:                                           State: PA
Property Address / City / State: 22-13-61 TUSCARORA DRIVE
                                 POCONO LAKE, PA 18347

See Legal Description Attached

Together with the note or obligation described in said mortgage, endorsed to the Assignee this date, and all money due to and become due thereon, with interest.  The assignee is not acting as nominee of the mortgagor and that the mortgage continues to secure a bonafide obligation.  The Assignment is not subject to the requirements of Section 275 of the Real Estate Property Law because it is an Assignment within the Secondary Mortgage Market.

TO HAVE AND TO HOLD the same unto Assignee and to the successors, legal representatives and assigns to the Assignee forever, and Assignor hereby constitutes and appoints said Assignee its attorney irrevocable to collect and receive said debt, and to foreclose, enforce, and satisfy said lien the same as it might or could have done were these presents not executed, but at the cost and expense of the Assignee, subject however to the right and equity of redemption, if any there be, of the maker(s) of the mortgage or deed of trust herein above described.

Executed this date,6/13/03                         **Mortgage America Inc.**
                                                   Lender Name

_Barbara J Koch_                                   By:_Karen Kupres_
Witness                                            Karen Kupres
                                                   Assistant Secretary

Attest:

State: Pennsylvania                                County Of: Lehigh

On this date, MONROE, before me, a Notary Public, Karen Kupres to me known, who, being duly sworn, did depose and say the (s)he is the Assistant Secretary of Mortgage America, of the corporation described in and which executed this foregoing instrument, and that (s)he signed her name by authority of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

I hereby certify the address                       _Kathleen M. Fairchild_
of within named assignee is:                       Notary Public
                                                   My Commission Expires:_____
200 Old Wilson Bridge Road
Worthington Ohio 43085                             Notarial Seal
_Barbara J Koch_                                   Kathleen M. Fairchild, Notary Public
                                                   Jim Thorpe Boro, Carbon County
                                                   My Commission Expires Feb. 19, 2004

REC bok 2156 PGE 7439

06/05/03  THU 10:06 FAX ▓▓▓▓      POCONO AREA ABSTRACT CO.      ☐008

Stewart Title Guaranty Company

Commitment Number: ▓▓▓▓

## SCHEDULE C
## PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

ALL THAT CERTAIN piece, parcel and tract of land situated in the Township of Coolbaugh, County of Monroe, and State of Pennsylvania, more particularly described as follows, to wit:

BEING ▓▓▓▓ set forth on the map entitled Plan of Lots, Arrowhead Lake, Section Thirteen, Coolbaugh Township, Monroe County, Pennsylvania, dated April 1965 Scale 1" to 100' by John B. Aichar, Monroe Engineering Inc., Stroudsburg, Pennsylvania and filed in the Office for the Recording of Deeds in and for the County of Monroe, Pennsylvania in Plat Book 9, Page 185 on May 4, 1965.

RECORDER OF DEEDS
MONROE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
200328151
RECORDED ON
Jun 17, 2003
10:07:56 AM
BOOK:REC/2156
PAGE:7639
Total Pages: 2

| RECORDING FEES | $13.00 |
|---|---|
| JCS/ACCESS TO JUSTICE | $10.00 |
| STATE WRIT TAX | $0.50 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL | $28.50 |

I Hereby CERTIFY that this document is recorded in the Recorder's Office of Monroe County, Pennsylvania.

Helen Dieudue

(TRAYNOR.PFD/8345/5)

ALTA Commitment
Schedule C

REC Book 2156 Page 7640



# COUNTY OF MONROE

**RECORDER OF DEEDS**
**610 MONROE STREET**
**SUITE 125**
**STROUDSBURG, PA 18360**
Area Code (570) 517-3969

Helen Diecidue - Recorder

Instrument Number - 201509230                    Book - 2453   Starting Page - 19
Recorded On 4/29/2015 At 3:47:27 PM              * Total Pages - 4
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 684422
* Grantor - TRAYNOR, SCOTT H
* Grantee - FEDERAL NATIONAL MORTGAGE ASSOCIATION
User - CAB
* Customer - SIMPLIFILE LC E-RECORDING
* FEES

| | | |
|---|---|---|
| STATE WRIT TAX | $0.50 | |
| JCS/ACCESS TO JUSTICE | $35.50 | |
| RECORDING FEES | $14.00 | |
| COUNTY ARCHIVES FEE | $2.00 | |
| ROD ARCHIVES FEE | $3.00 | |
| TAX CODE CERTIFICATION | $10.00 | |
| FEES | | |
| TOTAL PAID | $65.00 | |

**RETURN DOCUMENT TO:**
PEIRSON PATTERSON, LLP
4400 ALPHA RD
DALLAS, TX 75244

**MC GIS Registry UPI Certification**
**On April 29, 2015 By SS**

TAX ID #

Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the
Recorder's Office of Monroe County, Pennsylvania

Helen Diecidue

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

### THIS PAGE IS NOW THE LAST PAGE
### OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Book: **2453** Page: **22**

**Prepared By:**
PEIRSONPATTERSON, LLP
13750 OMEGA ROAD
DALLAS, TX 75244-4505
800-899-9027

**After Recording Please Return To:**
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505
800-899-9027

UPI/PIN/Tax ID █████████

───────────────────────── *[Space Above This Line For Recording Data]* ─────────────

Loan No. ████████
FNMA Loan No. ████████

# PENNSYLVANIA ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, S/B/M to Chase Manhattan Mortgage Corporation**, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254**, a certain Mortgage dated **June 13, 2003** and recorded on **June 17, 2003**, made and executed by **SCOTT H. TRAYNOR AND ROSEMARIE TRAYNOR**, to and in favor of **MORTGAGE AMERICA, INC.** upon the following described property situated in **MONROE** County, Commonwealth of Pennsylvania:

Property Address: **22-13- 81 TUSCARORA DRIVE, POCONO LAKE, PA 18347**

**ALL THAT CERTAIN PIECE, PARCEL AND TRACT OF LAND SITUATED IN THE TOWNSHIP OF COOLBAUGH, COUNTY OF MONROE, AND STATE OF PENNSYLVANIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:**

**BEING** ████████████████ **SET FORTH ON THE MAP ENTITLED PLAN OF LOTS, ARROWHEAD LAKE, SECTION THIRTEEN, COOLBAUGH TOWNSHIP, MONROE COUNTY, PENNSYLVANIA, DATED APRIL 1965 SCALE 1" TO 100' BY JOHN B. AICHER, MONROE ENGINEERING INC., STROUDSBURG, PENNSYLVANIA AND FILED IN THE OFFICE FOR THE RECORDING OF DEEDS IN AND FOR THE COUNTY OF MONROE, PENNSYLVANIA IN PLAT BOOK 9, PAGE 185 ON MAY 4, 1965.**

such Mortgage having been given to secure payment of **Seventy Two Thousand and 00/100ths** ($72,000.00), which Mortgage is of record in Book, Volume or Liber No. **2156**, at Page **7598** (or as No. **200328150**), in the Office of the Recorder of Deeds of **MONROE** County, Commonwealth of Pennsylvania.

───────────────────────────────────────────────

Pennsylvania Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876

I.73108PA 01/12 Rev. 02/14

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 9-11-2014.



Assignor:
**JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, S/B/M to Chase Manhattan Mortgage Corporation**

By: _Jeanette P. Sly_

Its: _VICE PRESIDENT_

Certificate of Residence:

I/We do hereby certify that the precise address of the within named mortgagee, assignee or person entitled to interest is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254**.

**JPMorgan Chase Bank, National Association as assignee or agent for assignee**

By: _Jeanette P. Sly_

Its: _VICE PRESIDENT_

## ACKNOWLEDGMENT

State of **Louisiana** §
§
Parish of **Ouachita** §

On this 11th day of September, 2014, before me appeared
**Jeanette P. Sly**, to me personally known, who,
being by me duly sworn (or affirmed) did say that he/she is the **VICE PRESIDENT**, of
**JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, S/B/M to Chase Manhattan Mortgage
Corporation**, and that the seal affixed to said instrument is the corporate seal of said national association and
that the instrument was signed and sealed on behalf of the national association by authority of its board of
directors and that **Jeanette P. Sly** acknowledged the
instrument to be the free act and deed of the national association.

Signature of Officer

**MELANIE K. SHRELL**
Notary Public
State of Louisiana
Lincoln Parish
La Bar # 30961
My Commission is for Life

**Melanie K. Shrell**

Printed Name

**NOTARY PUBLIC**

Title of Officer

(Seal)    My Commission Expires:    **At Death**

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY., BUILDING VII, PLANO, TX 75024, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **LSF11 MASTER PARTICIPATION TRUST, WHOSE ADDRESS IS 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 06/13/2003, in the amount of $72,000.00 made by **SCOTT H. TRAYNOR AND ROSEMARIE TRAYNOR** to **MORTGAGE AMERICA, INC.** recorded on 06/17/2003, in the Office of the Recorder of Deeds of **MONROE** County, in the State of **Pennsylvania**, in **Book 2156 and Page 7598**.

Property is more commonly known as: 22-13- 81 TUSCARORA DRIVE COOLBAUGH TOWNSHIP, POCONO LAKE, PA 18347.

See Exhibit attached for Assignments, Modifications etc.

**Dated this 04th day of March in the year 2019**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact (POA RECORDED: 07/11/2017 BK: 2494 PG: 2739 INSTR: 201716887)**

By: _____

**ALAN BAKER**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Loan No:

'EXHIBIT A'

Assignments, Modifications, Consolidations Exhibit

Assignment: JPMORGAN CHASE BANK, N.A., S/B/M CHASE HOME FINANCE LLC S/B/M TO CHASE
MANHATTAN MORTGAGE CORPORATION TO FEDERAL NATIONAL MORTGAGE ASSOCIATION



## STATE OF FLORIDA   COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 04th day of March in the year 2019, by Alan Baker as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**ALYSSA SAY**

**COMM EXPIRES: 10/02/2022**



ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG249609
EXPIRES: 10/2/2022

Assignment of Mortgage from:
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY., BUILDING VII, PLANO, TX 75024, (ASSIGNOR),**
to:
**LSF11 MASTER PARTICIPATION TRUST, WHOSE ADDRESS IS 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **SCOTT H. TRAYNOR AND ROSEMARIE TRAYNOR**

All that certain lot or piece of ground situated in
Mortgage Premise: 22-13- 81 TUSCARORA DRIVE COOLBAUGH TOWNSHIP
POCONO LAKE, PA 18347
MONROE
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Alan Baker**, do certify that the precise address of the within named Assignee is:
**LSF11 MASTER PARTICIPATION TRUST, WHOSE ADDRESS IS 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**ALAN BAKER**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



# COUNTY OF MONROE

**RECORDER OF DEEDS**
**610 MONROE STREET**
**SUITE 125**
**STROUDSBURG, PA 18360**
Area Code (570) 517-3969

Josephine Ferro - Recorder

Instrument Number - 201904858

Recorded On 3/4/2019 At 4:18:41 PM

* Instrument Type - ASSIGNMENT OF MORTGAGE

Invoice Number - 770606

* Grantor - TRAYNOR, SCOTT H

* Grantee - LSF11 MASTER PARTICIPATION TRUST

User - FRC

* Customer - SIMPLIFILE LC E-RECORDING

* FEES

Book - 2525   Starting Page - 2047

* Total Pages - 4

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $13.50 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TAX CODE CERTIFICATION FEES | $10.00 |
| TOTAL PAID | $69.25 |

**RETURN DOCUMENT TO:**
NATIONWIDE TITLE CLEARING INC.
2100 ALT 19 NORTH
PALM HARBOR, FL 34683

**MC GIS Registry UPI Certification**
**On March 4, 2019 By JG**

TAX ID #

Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the Recorder's Office of Monroe County, Pennsylvania

*Josephine Ferro*

# THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW THE LAST PAGE
## OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

# Exhibit "B"

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

| 0 | Valuation of Security | 0 | Assumption of Executory Contract or Unexpired Lease | 0 | Lien Avoidance |

**Last revised: September 1, 2018**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

In Re:                                                    Case No.: _____ 19-28352 _____

   Rosemarie Traynor                          Judge: _____ JKS _____

          Debtor(s)

## Chapter 13 Plan and Motions

☒  Original          ☐  Modified/Notice Required          Date: _09/27/2019_

☐  Motions Included   ☐  Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

> **The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

THIS PLAN:

☐ DOES ☒ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☐ DOES ☒ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☐ DOES ☒ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: ___CJK___     Initial Debtor: ___RT___     Initial Co-Debtor: _____

| Part 1: | Payment and Length of Plan |
|---|---|

a.  The debtor shall pay $ _____136.12_____ per _____Monthly_____ to the Chapter 13 Trustee, starting on _____October 27, 2019_____ for approximately _____60_____ months.

b.  The debtor shall make plan payments to the Trustee from the following sources:

    ☒    Future earnings

    ☐    Other sources of funding (describe source, amount and date when funds are available):

c.  Use of real property to satisfy plan obligations:

    ☐  Sale of real property
    Description:
    Proposed date for completion: _____

    ☐  Refinance of real property:
    Description:
    Proposed date for completion: _____

    ☒  Loan modification with respect to mortgage encumbering property:
    Description: 26 Plymouth Place Roseland, NJ 0706 ( Arrearage will be paid on the Loss Modification )
    Proposed date for completion: \_February, 2019_____

d.  ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.  ☐ Other information that may be important relating to the payment and length of plan:

**Part 2:    Adequate Protection ☐ NONE**

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ ____1,897.20____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ M & T Bank _____ (creditor).

**Part 3:    Priority Claims (Including Administrative Expenses)**

a.    All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $ |
| DOMESTIC SUPPORT OBLIGATION | | |

b.    Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:

☒ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

**Part 4:    Secured Claims**

**a. Curing Default and Maintaining Payments on Principal Residence:** ☐ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| M & T Bank | Mortgage | $64,222 | 0% | $64,222 | $1,897.20 |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears:** ☒ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

**c. Secured claims excluded from 11 U.S.C. 506:** ☒ **NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
|  |  |  |  |  |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments**    ☒ **NONE**

1.)  The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

2.)  Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

**e.  Surrender** ☒ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
|  |  |  |  |

**f. Secured Claims Unaffected by the Plan** ☒ **NONE**

The following secured claims are unaffected by the Plan:

**g. Secured Claims to be Paid in Full Through the Plan**: ☒ **NONE**

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|----------|------------|------------------------------------------|
|          |            |                                          |

---

**Part 5:    Unsecured Claims ☐ NONE**

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than $ _____ to be distributed *pro rata*

☒ Not less than __100%_____ percent

☐ *Pro Rata* distribution from any remaining funds

**b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|----------|-----------------------------------|-----------|-------------------|
|          |                                   |           |                   |

**Part 6:    Executory Contracts and Unexpired Leases  ☒ NONE**

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
|  |  |  |  |  |

**Part 7:    Motions  ☒ NONE**

**NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service*, *Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

**a.  Motion to Avoid Liens Under 11. U.S.C. Section 522(f).  ☒ NONE**

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

**b.  Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.**  ☒ **NONE**

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**c.  Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☒ **NONE**

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## Part 8:   Other Plan Provisions

**a. Vesting of Property of the Estate**

☒   Upon confirmation

☐   Upon discharge

**b.  Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

**c. Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

   1) Ch. 13 Standing Trustee commissions

   2) Secure claims _____

   3) Unsecured Claims _____

   4) _____

**d. Post-Petition Claims**

The Standing Trustee ☐ is, ☒ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

| Part 9:   Modification ☒ NONE |
| --- |

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
| --- | --- |
|  |  |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐ Yes    ☒ No

| Part 10:   Non-Standard Provision(s): Signatures Required |
| --- |

Non-Standard Provisions Requiring Separate Signatures:

☒ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

**Signatures**

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.


Date: 10/18/2019 _____        /s/ Rosemarie Traynor _____
                                                 Debtor


Date: _____        _____
                                                 Joint Debtor


Date: 10/18/2019 _____        /s/ Camille Kassar, Esq. _____
                                                 Attorney for Debtor(s)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

831626
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF11 MASTER PARTICIPATION
TRUST

| | |
|---|---|
| In Re: | Case No:  19-28352 - JKS |
| ROSEMARIE TRAYNOR | Hearing Date: 12/12/2019 |
| | Judge:  JOHN K. SHERWOOD |
| | Chapter:  13 |

## CERTIFICATION OF SERVICE

1.      I, Chris Villegas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.      On November 22, 2019 I sent a copy of the following pleadings and/or documents to the parties listed below:

**Objection to Plan**

3.      I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.


Dated:  November 22, 2019            /s/  *Chris Villegas*
                                            Chris Villegas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Rosemarie Traynor<br>22-13-81 Tuscarora Drive, Pocono Lake, PA 18347 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Camille Kassar, Esquire<br>271 Route 46 West<br>Suite C-102<br>Fairfield, NJ 07004 | Debtor's Attorney | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Marie-Ann Greenberg, Trustee<br>30 Two Bridges Road<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |

\* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.